■ JOHNSON, DRAKE & PIPER, INC., Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 43493.) — AULISI, J. Cross appeals from a judgment in favor of claimant, entered June 19, 1967 upon a decision of the Court of Claims. Claimant entered into a contract with the State of New York for the construction of a portion of the Heckscher State Parkway in Suffolk County, contract No. HSP 61–2. Upon completion of the contract, claimant submitted a verified claim containing seven causes of action and after a trial was awarded the sum of $72,944.05 on the first six causes of action. The appeals herein are taken from that award. The amount awarded for the seventh cause of action is not contested. A large quantity of topsoil had been stockpiled at the project site by a previous contractor. The Earthwork Table of the Contract Plans, under Item 2S, " Unclassified Excavation ", stated that there were 37,260 cubic yards (neat) of topsoil and made reference to the Special Note found in the Contract Proposal under Item 2S, which Note provided: " When all topsoil required for the Contract has been spread, the material remaining in the stockpiles, shall be disposed of as directed by the Engineer. If the Engineer directs that the stockpiles shall be removed from the site, payment for this work will be made under Item 2S." Prior to the letting of this contract, however, some 29,000 cubic yards of topsoil were removed at the State's direction from the site by another contractor and consequently the claimant only performed 8,178 cubic yards of " Unclassified Excavation ". It is claimant's contention that the specific amounts of topsoil stated in the Contract Plans together with the Special Note referred to therein amount to a representation by the State that there would be 29,082 cubic yards of topsoil remaining on the site for claimant to move and for which it would be paid under Item 2S. It further states that it relied upon that representation and in the first cause of action sought to recover the profit it would have realized had that quantity of excess topsoil remained and been removed by a subcontractor. Claimant was awarded $16,576.74 for said cause of action by the trial court. Contrary to the claimant's contention we conclude that neither expressly nor by implication was any representation made that there would be any specific quantity of excess topsoil remaining on the job site after completion of the project. The Special Note merely provides for removal and payment therefor in the event that there might be excess topsoil. Neither it alone nor read together with the specific estimate figure guarantees or warrants that any quantity of topsoil would remain after completion of the contract work. Furthermore, it should be noted in connection with claimant's alleged reliance on the figures contained in the contract documents that claimant's representatives visited the site prior to the submission of its bid and should have investigated the precise quantities involved. The Specifications specifically draw special attention to article 3 of the contract which provides that information to be obtained in connection with the site, quantities, location and other conditions affecting the work are to be secured by personal investigation and research and that there is to be no exclusive reliance on the estimates of the State. In the fourth cause of action, claimant sought to recover additional expenses incurred by it because of the State's alleged improper refusal to accept the contract work as of December 15, 1962. Claimant contends that

all of the work required by the contract had been completed as of that date, except for the obtaining of a satisfactory stand of grass. In regard to this latter item, claimant tendered to the State a certified check in twice the amount of the seeding item in the contract in an effort to "bond off" the seeding and requested that the retained percentages be released. The check was not accepted nor were the monies released. Final acceptance of the contract work did not take place until June 11, 1963. The trial court found that by reason of custom and usage, this so-called "bonding off" procedure for the seeding item became a part of the contract and that the State had unreasonably refused to accept the contract as of December 15, 1962. Awarded to the claimant were the expenses of maintaining a field office and personnel on the project site from that date until final acceptance. Testimony was introduced that it was a custom or usage in the New York highway construction trade to permit the "bonding off" of the seeding item and that claimant itself had been permitted on several occasions to employ this procedure on other State contracts (see 5 Williston, Contracts [3d ed.], §§ 648, 649, 654; 13 N. Y. Jur., Customs and Usages, § 4). This evidence was not contradicted. Although the "bonding off" technique was not mentioned in the Specifications of January 2, 1957 which were incorporated into the claimant's contract, it was specifically provided for in the Specifications of January 2, 1962, which, although not applicable to claimant's contract, were issued and published prior to the signing of the contract in question. Aside from achieving a satisfactory stand of grass, the trial court found that the contract work was complete on December 15, 1962. Under the circumstances, the State acted unreasonably in refusing to accept the contract work on that date and in refusing claimant's request to "bond off" the seeding work. The State raises the general objection with respect to causes of action numbered two through six that claimant is not entitled to an award because of its alleged failure to keep daily records of the work involved as required by the "Disputed Work" provision of the Specifications. At the trial the State conceded the amount of expenses incurred by claimant in performing each item of additional work and in view of this concession, there is no reason, upon the facts here presented, to disturb the determinations made by the trial court. Claimant's cross appeal challenging the award on the sixth cause of action is without merit. The apportionment of liability by the trial court was fair and reasonable on the record and should not be disturbed. Judgment modified, on the law and the facts, to dismiss the first cause of action and, as so modified, affirmed, without costs. Gibson, P. J., Reynolds, Aulisi, Staley, Jr., and Cooke, JJ., concur in memorandum by Aulisi, J.